Fitzgerald, Plaintiff in error, vs. The State, Defendant in error.

*March 2 — March 19, 1901.*

*Criminal law and practice: Burglary: New trial: Discretion.*

Upon a motion for a new trial, made by a defendant who, on the day after his arrest, had pleaded guilty to an information for burglary, it was urged that he was only eighteen years old, simple-minded and foolish, and was intoxicated when he broke and entered the building; that he had no lawyer to advise him, and no relative or friend to counsel with, but was advised, coaxed, and threatened by the police officers to plead guilty. Upon the evidence, however, ad-

duced before the trial court upon the hearing of the motion, it is *held* that it was not made to appear that justice had not been done, and that there was no abuse of discretion in denying the motion.

ERROR to review an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

*V. Linley*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General*, and oral argument by *C. E. Buell*, first assistant attorney general.

CASSODAY, C. J. At or about half past 2 o'clock on the morning of September 21, 1900, the plaintiff in error was arrested on the landing at the head of the flight of stairs leading from the basement of Stern's store building at the corner of Seventh street and Cummings avenue, in West Superior. He had gained access to the building by tearing up a heavy sidewalk adjacent thereto on Cummings avenue, which required a great deal of force to raise, and entering through a window beneath the walk. After he reached such landing, he attempted to forcibly enter the store occupied by Stern, but was prevented by one Ole Hanson, who had been a clerk in the store, and was then sleeping therein, and who was awakened by loud knocking and kicking on the door leading from his sleeping room into the cellar. The plaintiff in error had drank a considerable during the previous day and evening, but the extent of his intoxication at the time of his arrest was in dispute. At the time he was arrested he said, "I am up against it." He was taken to the municipal court about 2 o'clock in the afternoon of September 21st, and, after some talk, waived his preliminary examination, and was bound over to the circuit court. On the next day he was arraigned in the circuit court, and pleaded guilty to an information charging him with wilfully and feloniously breaking and entering in the night-time the store building

Fitzgerald vs. The State.

mentioned, then and there used and occupied by one Louis Stern as and for a shop or store, with intent on the part of said *M. J. Fitzgerald* to then and there commit the crime of larceny therein; and he was thereupon sentenced to the state prison for the term of three years.

The officers testified to the effect that when he entered such plea he was entirely sober; that he was fully informed of the serious nature of the charge against him, and the punishment provided therefor, and that he fully realized the same; that no coercion or intimidation was used by the officers having him in charge, nor was he advised by any one to plead guilty; that he was asked by said officers if they should not inform his parents, but he said that he did not want them to know of his arrest until after he was sentenced; that he requested to be taken at once to the circuit court, and receive his sentence, and commence serving his time, and not be compelled to lie around the county jail, where his time would not count upon his sentence. Upon being arraigned in the circuit court, the information was read to him, and he pleaded guilty. Before sentence was pronounced, he was asked by the court if he had anything to say why sentence should not be passed upon him, to which he replied, "No." It appears that he had theretofore been sentenced to the reform school on a criminal charge; that his mother had gotten him released on his promise to keep away from sporting houses and that he would go to work, and for this reason he did not want his mother to see him before he was sentenced; that three other burglaries of the same character had been committed in the vicinity of Stern's store just previous to the commission of this offense; that, before pleading guilty, or waiving his examination in the municipal court, he was taken to the judge's private room by the officer in charge, and was accused of having committed these various burglaries; that he denied the same; that, after having pleaded guilty, he was

taken into the chief of police's room, and was informed of the evidence against him; that he thereupon admitted having committed all of these crimes, and told the officers just how each offense was committed.

The plaintiff in error testified to the effect that he did not remember how he got into Stern's grocery store; that he did not go in there to steal; that he was pretty drunk when arrested, but walked straight with the officer who arrested him; that the officers advised him to plead guilty, saying that there was no use of his fighting it and that they would bring other charges against him if he did not plead guilty; that when they charged him with other offenses he told them that he had not done these things, but had knowledge about them; that they were done by others; that he pleaded guilty in the circuit court because he thought it was the only thing he could do; that he supposed he was bound by what he said in the municipal court; that he did not know his age, but supposed he was about twenty-one years old, and so stated in the circuit court; that when he got drunk he was crazy and did not know what he was doing.

After he was sentenced, and before being sent to the state prison, his parents were notified and visited him; and his mother testified that he was only eighteen years of age. Soon after he was thus sentenced, his parents retained counsel, and on October 29, 1900, such counsel moved the circuit court to set aside the judgment and sentence and the plea of guilty, and for a new trial, basing such motion upon the affidavit of the prisoner and his parents and three others, and upon the hearing of the motion the state presented five affidavits in opposition thereto. A summary of the facts stated in the several affidavits is given above. After the hearing the circuit court took the motion under advisement, and November 13, 1900, denied the same, and thereupon entered an order upon the merits to that effect. To reverse that order the prisoner sued out this writ of error.

Fitzgerald vs. The State.

Under the statute as it existed prior to 1897 it was held by a divided court that an order denying a motion for a new trial, made after judgment in a criminal case, was not a final judgment, nor an order in the nature of a final judgment, to review which a writ of error would lie. Sec. 4719, R. S. 1878; *Jackson v. State*, 92 Wis. 422. In that year that section of the statute was amended by adding thereto a provision to the effect that, when an application for a new trial under that section should be refused, a writ of error should, on the application of the defendant, be issued from this court to bring such matter before it; and that upon such writ this court should "have the power to review the order refusing to grant a new trial, and render such judgment thereon as it" might deem proper. Sec. 4719, Stats. 1898; ch. 9, Laws of 1897; and ch. 172, Laws of 1897. In the body of the section it is provided, in effect, that "on the petition or motion in writing of the defendant" within one year after conviction, and either before or after judgment, the circuit court may "grant a new trial for any cause for which by law a new trial may be granted, or when it shall *appear* to the court *that justice has not been done,* and on such terms and conditions as the court may direct." The only question for consideration, therefore, is whether it was made to *appear* to the trial court that justice had not been done to the plaintiff in error. The argument of his counsel is to the effect that he was only eighteen years of age; that he was simple-minded and foolish, and that it was "on the top of that heavy drink;" that he had no lawyer to advise him, and no relative or friend to counsel with; that he was advised, coaxed, and threatened by the officers in charge to plead guilty. The breaking and entering of the building is conceded. He was not so much under the influence of liquor when arrested but that he could walk with the officer and comprehend his situation. The reason why he pleaded guilty without consulting his parents is obvious from the

statement made.  We have carefully examined the evidence, and cannot say that justice has not been done.  On the contrary, we think it has been done.  Besides, the granting of the order was discretionary, and we do not think there was any abuse of such discretion.

*By the Court.*— The order of the circuit court is affirmed.